IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C 06-0428 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JOE'S MOTION TO SUPPRESS** |
| v. | |
| JEFFREY RANDALL JOE, et al., | |
| Defendants. | |

On December 22, 2006, the Court heard argument on defendant Joe's motion to suppress. For the reasons set forth below, the Court finds that under the totality of the circumstances, there was probable cause to search defendant's residence. The Court further finds that while portions of the search warrant were sufficiently particular, other portions of the warrant were too broadly worded and not supported by probable cause. The Court severs the defective portions of the warrant, and suppresses any evidence seized pursuant to those portions of the warrant.

**BACKGROUND**

On June 22, 2005, investigators obtained and executed a state search warrant for defendant Joe's residence, located at 1807 29th Avenue, San Francisco, California.[1] During the search, officers seized the following items: (1) a "beverage container" of suspected marijuana; (2) a plastic bag of suspected

---

[1] Officers also obtained and executed a search warrant for 2486 35th Avenue. At that location, officers seized 584 marijuana plants and 908 marijuana clones. *See* Martinovich Decl. ¶ 12. As discussed *infra*, defendant contends that there was insufficient information in Martinovich's affidavit to support a finding that 2486 35th Avenue was a marijuana grow-site, and thus defendant's connection to that location could not supply probable cause for the search warrant of his residence. Defendant does not challenge the search of 2486 35th Avenue.

1   marijuana; (3) a digital scale; (4) a Smith & Wesson .38 caliber firearm; (5) two boxes of bullets; (6)
2   "indicia"; (7) keys; and (8) a cellular phone. Joe moves to suppress the items seized on the grounds that
3   the affidavit submitted in support of the warrant failed to establish probable cause, and that the warrant
4   lacked particularity.

5           The affidavit in support of the search warrant was prepared by San Francisco Police Department
6   Officer David Martinovich. Martinovich's affidavit stated, *inter alia*, that since the fall of 2003,
7   Martinovich had been speaking with a reliable confidential informant ("CI") who was providing
8   information in the hope of receiving favorable consideration on a pending criminal case. *See* Def's
9   Motion, Ex. B at 8221.[2] The CI had provided Martinovich with information that resulted in the issuance
10  of over five search warrants, the seizure of large amounts of marijuana and cocaine and several guns,
11  and at least three arrests. *See id.* The affidavit states, "CI's information has resulted in the service of
12  search warrants on over 5 indoor marijuana grow locations between winter 2003 and June 2005." *Id.*

13          The affidavit states that the CI has provided Martinovich with information on numerous
14  marijuana cultivators in the San Francisco Bay Area, including (co-defendant) Richard Wong. The
15  affidavit describes the search of Wong's residence, which uncovered evidence of marijuana cultivation,
16  the searches of several marijuana grow-sites associated with Wong, and Wong's arrest on marijuana
17  cultivation charges. *Id.* at 8221-23.

18          The affidavit also states that in mid-2004, CI told Martinovich about an individual known to CI
19  as "Ching," who was later confirmed to be (co-defendant) I. Ching Chu, and about Chu's friend "Jeff"
20  (later identified as defendant Joe). *See* Def's Ex. B at 8222. The CI described "Jeff" as an Asian male,
21  short and overweight. *Id.* The CI further reported that Jeff lived at 1807 29th Avenue and drove a blue
22  Toyota bearing California license # 3EYT605. *Id.* Martinovich ran a DMV check on the vehicle and
23  learned it was registered to defendant Joe at 1807 29th Avenue in San Francisco. The address on the
24  driver's license matched the one provided by the CI, and the CI's description of Joe was consistent the
25  with driver's license which listed Joe as 5'5" tall and 170 pounds. *Id.*

---

27      [2] The affidavit states that the CI had been charged with conspiracy to traffic MDMA in May
28  2005 "in connection with current narcotics investigation in which CI provided information contributing to probable cause in numerous affidavits." *Id.* .

2

Martinovich obtained a DMV photograph of defendant, and on May 27, 2004, the CI identified the person in the photograph as the person he knew as Jeff, who worked with "Ching" tending marijuana grows for Wong. *Id.* Martinovich's affidavit states,

> CI has told me over the past year, on various occasions, that he/she knows Richard WONG, "CHING" (Iching CHU) and "Jeff" (Jeffrey Randall Joe). CI told me on those occasions that the information CI has given to me is based on conversations he/she has had with WONG and CHU. CI said that in these conversations with either "Ching" or Wong, they have discussed their ongoing marijuana cultivation business, including the fact that CHU and Jeffrey JOE maintain two or three marijuana grows for Richard Wong. CI told me that he/she has not personally been to any of the marijuana grows and does not know their locations.

*Id* at 8223.

The affidavit also states that on June 6, 2005, Martinovich spoke to a neighbor of 2486 35th Avenue, a suspected marijuana grow-site.[3] *Id.* at 8224. The neighbor told Martinovich that the person who lived at 2486 35th Avenue had died approximately one year prior, that the house was sold, and that no one appeared to live in the house. *Id.* The neighbor also told Martinovich that "two or three different Asian males come and go from time to time," *id.*, and the neighbor identified defendant Joe (based upon his DMV photo) as one of the people he/she had seen coming and going from the house. *Id.* at 8225. The affidavit also includes Martinovich's observations of the house, including the facts that the windows had closed blinds, there were what appeared to be additional vents on the roof, Martinovich could *not* smell marijuana coming out of the vents, the electricity usage as per PG&E was not unusual, and measurements taken by the DEA Tech Squad showed that the house was using 34 times the electricity used by randomly-selected homes on the same block. *Id.* at 8224-25. Martinovich's affidavit also stated that it has been his experience that at residential marijuana grows, the operators of indoor grows steal power from PG&E. *Id.* at 8224.

Finally, Martinovich states in the affidavit that based on his training and experience, "I know that operators of indoor marijuana grows who are in conspiracies to cultivate and distribute marijuana often keep the same type of evidence at their residence as is located in the grow [s]ites." *Id.* at 8226.

---

[3] The affidavit states that "based on prior surveillance," Martinovich suspected that 2486 35th Avenue was a marijuana grow location. *Id.* at 8223. Martinovich does not describe this prior surveillance, nor does he explain the basis for his suspicion.

3

**DISCUSSION**

**I.     Probable cause**

Joe raises a number of related contentions challenging the finding of probable cause. First, he argues that the CI did not have any direct information about Joe's involvement in marijuana cultivation, and to the extent the CI provided indirect incriminating information, that information was stale. Second, he contends that to the extent probable cause for defendant's residence was based upon his connection to 2486 35th Avenue, there was insufficient information in the affidavit to show that 2486 35th Avenue was a marijuana grow-site. Finally, defendant contends that even if there was reason to believe that defendant was working for Wong tending Wong's marijuana grow-sites, there was nothing in the affidavit to support a search of defendant's residence.

The issuance of a search warrant is reviewed for clear error. *See United States v. Baldwin*, 987 F.2d 1432, 1435 (9th Cir.), *cert. denied*, 508 U.S. 967 (1993). This Court must determine whether there was a "substantial basis" for concluding that the warrant was supported by probable cause. *See United States v. Brown*, 951 F.2d 999, 1002 (9th Cir. 1991). The judge making the original determination of probable cause is accorded significant deference by the reviewing court. *See United States v. Fulbright*, 105 F.3d 443, 453 (9th Cir. 1997).

**A.     Information provided by the CI**

Defendant contends that the CI's information could not provide probable cause because it largely consisted of innocent, easily obtainable "static" details such as defendant's name, address, physical description, and the type of car he drove. Defendant argues that the only information from the CI connecting defendant with criminal activity were secondhand statements allegedly made by Chu and Wong to the CI regarding defendant's involvement "tending" several of Wong's marijuana grows.

Although the Court agrees with defendant that much of the CI's information about defendant could not furnish probable cause, the Court finds that the CI's information that, "on various occasions" he had conversations with Chu and Wong in which they "discussed their ongoing marijuana cultivation business, including the fact that Chu and [defendant Joe] maintain two or three marijuana grows for Richard Wong," could provide probable cause. The affidavit contained considerable detail regarding

4

the CI's reliability, and in particular stated that the CI had supplied information about Wong that led to the discovery of several marijuana grow-sites and Wong's recent arrest on marijuana cultivation charges. All of this information helps to establish the reliability of the CI's admittedly secondhand information about defendant's involvement in marijuana cultivation. Accordingly, the Court rejects defendant's contention that the CI's information could not be considered by the judge because it was secondhand, or because the remaining information about defendant was non-specific and "innocent." *See United States v. Castillo*, 866 F.2d 1071, 1077-78 (9th Cir. 1988) (issuing judge may rely on hearsay in affidavit supporting search warrant); *see also United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986) ("To determine whether information provided by informants establishes probable cause, a magistrate looks to the 'totality of the circumstances.'" (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983))).

Defendant also contends that the information from the CI was too stale to provide probable cause for the warrant. Defendant argues that the CI's information only covered the period of May 2004 until perhaps the fall of 2004, and there was no information in the affidavit to suggest that defendant's involvement in Wong's marijuana grow operation was ongoing. Staleness must be evaluated in light of the particular facts of the case, the nature of the criminal activity, and the property sought. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). Where evidence is sought of a necessarily long-term criminal business, such as marijuana growing, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time. *See id.* In *Greany*, the Ninth Circuit held that two year old information regarding marijuana cultivation at the defendant's residence was not stale because one may infer that equipment acquired to accomplish the crime and records of criminal activity would still be present two years after the operation began. *See id.*; *see also Dozier*, 844 F.2d at 707 (five and a half month old information not stale in ongoing marijuana cultivation case).

Here, the Court concludes that in light of the scope and duration of the criminal activity described in the affidavit, the CI's information was not too stale to support probable cause. The affidavit stated that Wong had been arrested by the DEA on a federal warrant charging conspiracy to cultivate and distribute marijuana, and that the charged conspiracy spanned January 2001 and June 2005. *See* Def's Motion, Ex. B at 8223. The affidavit also included the CI's information that Wong and Chu had told

5

the CI that defendant tended marijuana grows for Wong during the time period covered by the charged conspiracy. Further, in June 2005 defendant was identified as one of the people seen entering and exiting a suspected marijuana grow location, 2486 35th Avenue.[4] For all of these reasons, the Court finds that the CI's information, which had proven reliable on numerous occasions as documented in Martinovich's affidavit, was not stale.

### B.    2486 35th Avenue

Defendant contends that there was insufficient information in the affidavit to show that 2486 35th Avenue was a marijuana grow-site, and thus the information connecting defendant to that location does not supply probable cause for the warrant. Defendant argues that Martinovich's affidavit largely contains boilerplate observations about the building, and that Martinovich did not explain the "prior surveillance" of that location which led him to suspect that the house was being used as a grow site.

Under the totality of the circumstances, the Court concludes that the affidavit contained sufficient facts to support the judge's finding that there was a "fair probability" that 2486 35th Avenue contained evidence of marijuana cultivation and distribution. *See United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). The Court agrees with defendant that Martinovich's bare statement that he suspected the house was used as a marijuana grow-site cannot be given any weight. However, the affidavit also includes the following information which provides a basis for concluding that 2486 35th Avenue was used as a grow-site: (1) a neighbor stated that the person who lived at 2486 35th Avenue had died the preceding year, the house had been sold, no one appeared to currently live in the house, yet several different Asian men (including defendant) were seen coming and going from the house; (2) Martinovich observed that the windows were always covered, and the roof of the house contained two vents which appeared to have been added,[5] including one spinning at a high rate of speed; (3) although the PG&E records showed a not unusual electricity usage at the house, the DEA Tech Squad determined

---

[4] The Court addresses *infra* defendant's contention that there was insufficient evidence to support the finding that 2486 35th Avenue was a marijuana grow-site.

[5] Martinovich states that the two vents appeared to have been added because other roofs that he could see did not contain those vents. Def's Motion, Ex. B at 8224.

that the house was using 68 amps of electricity compared with two other houses on the same block, which were using 2 amps of electricity; and (4) Martinovich observed Chu's and defendant's vehicles parked near the house on several occasions. These facts, taken in combination, provide a sufficient basis to believe that 2486 35th Avenue was a marijuana grow-site. Accordingly, because defendant was connected to 2486 35th Avenue both by the neighbor's identification and Martinovich's surveillance, this information provided a further ground for the finding of probable cause.

### C. Probable cause specific to defendant's residence

Defendant also contends that there was no information in the affidavit to allow the judge to conclude that evidence of marijuana cultivation offenses was likely to be found at his residence. Defendant argues that there was no evidence that he was a "drug trafficker," and instead, at most the affidavit establishes that he "tended marijuana gardens for Richard Wong." Thus, defendant contends, "If Mr. Joe simply worked as a gardener at grow rooms belonging to Richard Wong, it would be far less likely that Joe, as opposed to a person who engaged in narcotics transactions, would maintain evidence of drug trafficking at his home." Def's Motion at 10.

The Court finds defendant's contentions lack merit. Courts have frequently recognized that "in narcotics cases, evidence is likely to be found where the dealers live." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). The fact that defendant allegedly tended grow-sites for Wong and was not the leader does not negate the possibility that defendant would have evidence at his residence. "When the traffickers consist of a ringleader and assistants, a fair probability exists that drugs will be present at the assistants' residence as well as the ringleader's." *Angulo-Lopez*, 791 F.2d at 1399. In addition, the judge was permitted to rely on Martinovich's statement in the affidavit that "[b]ased on my training and experience, I know that operators of indoor marijuana grows who are in conspiracies to cultivate and distribute marijuana often keep the same type of evidence at their residence as is located in the grow [s]ites." Def's Motion, Ex. B at 8226. *See United States v. Hernandez-Escarcega*, 886 F.2d 1560, 1567 (9th Cir. 1989).

## II.     Particularity

Joe contends that the warrant fails the particularity requirement of the Fourth Amendment. The warrant authorized the seizure of the following items:

> Marijuana, and paraphernalia commonly associated with the cultivation, storage, packaging and sale of marijuana including but not limited to: high intensity grow lights, ballasts (electric transformers), light reflectors, cordsets, timers, growing tray and reservoir watering systems with pumps, chemical plant foods/nutrients, oscillating fans, duct fans, vent fans, $CO_2$ Generators, air cleaners, insecticidal soap, grow medium sheets and cubes, air filters, packaging material, scales, snippers, and vacuum packing equipment. Items of evidence which would tend to identify the person or persons currently involved in the illegal cultivation of marijuana and whereabouts of other locations (home residences, storage lockers, apartments, vehicles, safe deposit boxes, etc) where additional evidence is located including the following: U.S. Mail, photographs, receipts, keys, personal address books, lists of co-conspirators and customers, pay/owe records indicating illegal sales of marijuana, bank records, etc., cellular telephones and their stored data, lists of incoming and outgoing calls as well as telephone directories. All documentary evidence defined in California Penal Code 1524(f) including, all U.S. currency, buyer/seller lists, records of marijuana cultivation, trafficking, and money laundering. All computers and related or similar devices, and information on hard or floppy drives, which may contain any documents or records described above. Any firearms.

Def's Motion, Ex. A at 8219.

A valid warrant must particularly describe both the place to be searched and the person or things to be seized. In determining whether a description is sufficiently precise, the Ninth Circuit has instructed courts to focus on one or more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *See United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).

Defendant's motion does not specifically challenge the items listed in the first sentence of the warrant. These items are all associated with the specific criminal conduct of "cultivation, storage, packaging and sale of marijuana." The Court finds that there was probable cause to seize all of these items, and that the description of these items is "specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *Id*. at 963; *see also United States v. Meek*, 366 F.3d 705, 715 (9th Cir. 2004) (holding that a warrant listing items including "photography equipment" and "paraphernalia used to lower the inhibition of children" was sufficiently specific

8

because "all items listed in the warrant were limited to materials related to 'sexual exploitation of a child.'").

The second sentence of the warrant authorized the seizure of "[i]tems of evidence which would tend to identify the person or persons currently involved in the illegal cultivation of marijuana and whereabouts of other locations (home residences, storage lockers, apartments, vehicles, safe deposit boxes, etc) where additional evidence is located including the following: U.S. Mail, photographs, receipts, keys, personal address books, lists of co-conspirators and customers, pay/owe records indicating illegal sales of marijuana, bank records, etc., cellular telephones and their stored data, lists of incoming and outgoing calls as well as telephone directories." Defendant contends that the warrant broadly authorized seizure of his business, travel and personal documents without any reference to any criminal conduct. However, defendant overlooks the prefatory language stating that U.S. mail, photographs, receipts, etc. are only to be seized if they "would tend to identify the person or persons currently involved in the illegal cultivation of marijuana" and "whereabout of other locations (home residences . . .) where additional evidence is located." Def's Motion, Ex. A at 8219. Because the warrant narrowed the seizure of such items only to those linked to illegal marijuana cultivation, the Court finds there was probable cause to seize these items.

The third sentence and fourth sentences of the warrant are problematic, however. The third sentence authorized the seizure of "all documentary evidence defined in California Penal Code 1524(f) including, all U.S. currency, buyer/seller lists, records of marijuana cultivation, trafficking, and money laundering." California Penal Code Section 1524(f) states, "documentary evidence" includes, but is not limited to, "writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, X-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films, and papers of any type or description." Cal. Penal Code § 1524(f). Although there was probable cause to search for U.S. currency, buyer/seller lists, and records of marijuana cultivation and trafficking, there was not probable cause to seize evidence of money laundering (as the government concedes), nor was there probable cause to search for all of the "documentary evidence" listed in Section 1524(f). Section 1524(f) is written extremely broadly to include, *inter alia*, "papers of any type or description." The warrant could easily have been written to limit the "documentary evidence" to be seized to material with a connection to

1  marijuana cultivation or distribution. Instead, the warrant authorized the seizure of any writings,
2  documents, papers, etc., whether or not they were connected to marijuana cultivation. This language
3  was overbroad, *see United States v. Kow*, 58 F.3d 423, 426-27 (9th Cir. 1995), and the Court severs the
4  language "all documentary evidence defined in California Penal Code 1524(f)" and "money laundering"
5  from the warrant. *See Fulbright*, 105 F.3d at 453. Any evidence obtained pursuant to this portion of
6  the warrant is suppressed. *See United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994).

The fourth sentence of the warrant authorized the seizure of "computers and related or similar devices, and information on hard or floppy drives, which may contain any documents or records as described above." This sentence does not contain any specific limitation to criminal conduct, and instead simply references "documents or records as described above." However, as discussed *supra*, a portion of the preceding sentence authorized the seizure of, *inter alia*, "papers of any type or description." Because this language is overbroad, the fourth sentence's incorporation of that language similarly renders the fourth sentence defective. Accordingly, the Court severs this sentence and suppresses any evidence seized pursuant to this portion of the warrant. *See id.*

Finally, the last sentence of the warrant authorizes the seizure of "any firearms." Defendant contends that there was insufficient probable cause to support to seizure of firearms. However, the Ninth Circuit has repeatedly held that "[f]irearms are known tools of the trade of narcotics dealing because of the danger inherent in that line of work." *United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) (*quoting United States v. Butcher*, 926 F.2d 811, 816 (9th Cir. 1991).

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part defendant Joe's motion to suppress. (Docket No. 81).

**IT IS SO ORDERED.**

Dated: January 10, 2007

SUSAN ILLSTON
United States District Judge

10

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11